[No. A065160. First Dist., Div. Four. Aug. 21, 1995.]

JOANNE SCHMIDT, Plaintiff and Respondent, v.
RETIREMENT BOARD OF THE CITY AND COUNTY OF SAN
FRANCISCO EMPLOYEES, Defendant and Appellant.

COUNSEL

Louise H. Renne, City Attorney, Dan Maguire and David Benjamin, Deputy City Attorneys, for Defendant and Appellant.

James F. Harrigan and Maryann Dresner for Plaintiff and Respondent.

OPINION

PERLEY, J.—Retirement Board of the City and County of San Francisco Employees (appellant) appeals from a judgment granting Joanne Schmidt's (respondent) petition for a peremptory writ of mandate. The writ of mandate commanded appellant to set aside its decision denying respondent a continuation of her deceased husband's retirement benefits. Appellant contends that the trial court erred in ruling that an ex parte order establishing the date of a marriage under Health and Safety Code[1] section 10550 et seq. is conclusive under Code of Civil Procedure section 1908, subdivision (a)(1). We reverse.

### FACTUAL BACKGROUND

Under San Francisco Charter section 8.573(d), respondent is eligible for a continuation of her deceased husband's retirement benefits (continuation allowance) only if she was married to the deceased at least one year prior to his death. On April 27, 1992, respondent obtained an ex parte order,

---

[1]Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

pursuant to section 10550 et seq., from the San Francisco Superior Court, which order judicially established that respondent and her deceased husband were married in 1975.[2]

On June 12, 1992, an administrative hearing was held to consider evidence relating to respondent's application for a continuation allowance. The chief factual issue was whether respondent was married to her husband for at least one year prior to his death on January 5, 1992.[3] The administrative law judge issued a decision on January 8, 1993, denying respondent's application, based upon a factual finding that no valid marriage, or marriage ceremony, took place between respondent and her husband in November 1975. Central to the administrative law judge's decision was the determination that the April 27, 1992, ex parte order created only a rebuttable presumption of the fact of the November 1975 marriage.

On June 21, 1993, respondent filed a petition for a writ of mandate directing that the administrative decision be reversed. The trial court, after reviewing the considerable briefs submitted by both parties, ruled in favor of respondent. The court's decision was based upon a determination that the April 27, 1992, ex parte order establishing the fact of the November 1975 marriage between respondent and her husband was conclusive under Code of Civil Procedure section 1908, subdivision (a)(1). The court therefore issued a peremptory writ of mandate directing appellant to set aside its decision denying respondent's continuation allowance. Due to the ex parte nature of the April 27, 1992, order, however, the court gave appellant 120 days from the date of judgment to seek to have the order either vacated or modified by the court which originally issued the order. This appeal followed.[4]

## DISCUSSION

### 1. *Appellate Jurisdiction*

As a preliminary matter, we consider respondent's contention that appellant cannot establish appellate jurisdiction because (1) it is not an aggrieved party under Code of Civil Procedure section 902, and (2) it has impliedly waived its right to appeal. We conclude that appellant has standing to appeal.

[2]The April 27th order, which was filed in In re Marriage of Schmidt and Smith (Super. Ct. S.F. County, 1992, No. 942444) on April 28, 1992, reads in its entirety:

"This matter came on regularly before me on this date. Upon evidence proven to the satisfaction of this Court:

"It is hereby ordered that the marriage between JoAnne Schmidt and Andrew John Smyth which took place on November 20, 1975 is a valid marriage."

[3]It is uncontested that respondent was validly married to her husband in a civil ceremony on November 5, 1991.

[4]After filing its notice of appeal, appellant moved to set aside the April 27, 1992, ex parte order. The motion was denied.

An aggrieved party has been defined as one who has an immediate, pecuniary, and substantial interest that is injured by the judgment. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953].) In support of its contention that appellant is not an aggrieved party, respondent cites *Hensley* v. *Hensley* (1987) 190 Cal.App.3d 895 [235 Cal.Rptr. 684]. In *Hensley*, the defendants argued that the trial court should have modified, rather than set aside, a default money judgment entered against them. (*Id.* at p. 897.) Recognizing that the defendants would as a result have to defend the case on the merits, the court nevertheless ruled that the defendants were not an aggrieved party. (*Id.* at p. 899.) "[The defendants] seek review of a court order which, while not granting the exact form of relief sought (a modification of the damages award to zero), offers them total relief from the default judgment. The immediate result is the same: the [defendants] are no longer burdened by a money judgment against them." (*Ibid.*)

In the present case, however, the judgment did not grant appellant "total relief." Notwithstanding the opportunity offered to seek to modify or vacate the April 27, 1992, ex parte order, which right appellant possessed in spite of the judgment (see 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 195, pp. 594-595), the effect of the judgment was to obligate appellant to pay respondent a continuation allowance for the duration of her life or until she remarries. (S.F. Charter, § 8.573.) Such an immediate, pecuniary, and substantial obligation certainly makes appellant an aggrieved party.

Respondent contends that appellant waived its right to appeal because it "voluntarily complied" with the judgment and "accepted the benefit" of the judgment. ■ "It is well settled [that] a party who voluntarily complies with the terms of a judgment impliedly waives the right to appeal." (*A.L.L. Roofing & Bldg. Materials Corp.* v. *Community Bank* (1986) 182 Cal.App.3d 356, 359 [227 Cal.Rptr. 308]; *Reitano* v. *Yankwich* (1951) 38 Cal.2d 1, 2 [237 P.2d 6, 39 A.L.R.2d 191].) Compliance with a judgment must be shown by way of compromise or an agreement not to appeal. (*Reitano* v. *Yankwich*, *supra*, at p. 3.) Similarly, voluntary acceptance of the benefit of the judgment bars an appeal from that judgment. (*Epstein* v. *DeDomenico* (1990) 224 Cal.App.3d 1243, 1246 [274 Cal.Rptr. 521].) Acceptance, however, must be unconditional, voluntary, and absolute. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744 [131 Cal.Rptr. 873, 552 P.2d 1169].) "Furthermore, where the benefits accepted are those to which the appellant would be entitled even in the event of reversal, acceptance thereof does not bar prosecution of the appeal." (*Ibid.*)

Here, it can hardly be said that appellant's unsuccessful motion to set aside the April 27, 1992, ex parte order constituted either voluntary

compliance with, or acceptance of, the benefits of the judgment. In seeking to set aside the order, appellant was not acting voluntarily but under compulsion of having to pay respondent a continuation allowance. The record fails to disclose that this motion was made by way of compromise or an agreement not to appeal. In addition, the opportunity to pursue this motion was not a benefit conferred by the judgment, but one to which appellant was already entitled. Lastly, appellant made it abundantly clear in its memorandum of points and authorities in support of its motion to set aside the ex parte order that it was not waiving its right to appeal: "[T]he Board does not agree that the *ex parte* Order is binding on the Retirement Board, or that the Board is legally required to attempt to set the order aside. [Citations.] By bringing this motion, the Board does not waive its right to appellate review of these or related issues."

## 2. *Section 10550 et seq.*

■ The issue presented by this appeal is whether an ex parte judicial order establishing the fact of a marriage, issued under section 10550 et seq., conclusively establishes that fact. We are unable to find any reported cases specifically addressing this issue. For the reasons discussed below, we conclude that the trial court erred not only in determining that the ex parte order was conclusive but also in according it *any* evidentiary effect.

"In construing a statute a court's objective is to ascertain and effectuate the underlying legislative intent." (*Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].) We turn first to the words themselves for the answer. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) ■ However, ". . . the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Ibid.*; see also *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

Division 9 of the code entitled "Vital Statistics," provides a comprehensive scheme for the registration and certification of all births, deaths, and

marriages. (§ 10000 et seq.) Each of these events must be registered with the local registrar within a certain number of days after it occurs. Under this statutory scheme, marriages must "be registered by the person performing the ceremony" within 30 days. (§ 10325; Fam. Code, § 423.)

Sections 10550 through 10558 of the code are found in division 9, Chapter 10, which is entitled, "Court Proceedings to Establish Record of Birth, Death or Marriage." Chapter 10 provides for ex parte court proceedings "to judicially establish the fact of, and the time and place of a birth, death or marriage which is not registered or for which a certified copy is not obtainable." (§ 10550.) The proceeding is commenced upon the filing of a verified petition which "shall contain all the facts necessary to enable the court to determine the fact of and the time and place of the . . . marriage upon the proofs adduced in behalf of the petitioner at the hearing." (§ 10551.) If the allegations of the petition are established to the satisfaction of the court, "the court may make an order determining that the . . . marriage did in fact occur at the time and place" alleged in the petition. (§ 10555.)

The evidentiary weight to be given chapter 10 birth orders is explained in section 10557. This section provides in relevant part: "Every order determining the date of birth made pursuant to this chapter shall establish a presumption that the matter contained therein is a true and accurate statement of the time of birth. The presumption established by this section is a presumption affecting the burden of proof." There is no statutory provision setting forth the evidentiary weight to be accorded chapter 10 marriage or death orders.

 It is apparent from the express language of section 10557 that the Legislature intended only to establish a presumption for birth orders. Section 10557 specifically provides only the evidentiary weight to be accorded birth orders and omits any reference to judicial orders establishing the fact of a marriage. It is well settled that " '[i]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . .' " (*Gonzales* v. *Concord Gardens Mobile Home Park, Ltd.* (1979) 90 Cal.App.3d 871, 874 [153 Cal.Rptr. 559].) This court therefore cannot conclude, in the absence of a statutory provision, that marriage orders are entitled to the same presumption affecting the burden of proof as are birth orders under section 10557. " 'The statute with which we are here concerned was adopted by the Legislature, and until it is modified or repealed the courts are without power to do other than apply the plain terms thereof. The policy of the state in matters of this kind is committed by the people to the Legislature; and whether such policy is sound or not must be determined by the legislative, and not the judicial, branch of the government.' " (*People* v.

*Redford* (1961) 194 Cal.App.2d 200, 206-207 [14 Cal.Rptr. 866], quoting *People* v. *Hector* (1951) 104 Cal.App.2d 392, 395 [231 P.2d 916]; see also 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 114, p. 167 [power to make laws is vested in the Legislature].)

Further, section 10577, which establishes that birth, death, and marriage records are accorded prima facie evidence in the courts, is not applicable to chapter 10 judicial orders. That section applies only to "[a]ny birth, fetal death, death, or marriage record which was registered within a period of one year from the date of the event under the provisions of this division . . . ." In the typical case, a chapter 10 judicial order would not be registered within one year from the date of the event since the purpose of obtaining the order is to obtain a certificate to replace one which was never registered or to obtain a certified copy of the registration when the original records were lost or destroyed. (See 1 Kirkland et al., Cal. Family Law: Practice and Procedure (2d ed. 1995) § 10.64, p. 10-77.)

Finally, Code of Civil Procedure section 1908, subdivision (a)(1), on which respondent relies, is not applicable to marriage orders. That section provides, in relevant part: "(a) The effect of a judgment or final order in an action or special proceeding before a court or judge of this state . . . having jurisdiction to pronounce the judgment or order, is as follows: [¶] (1) In case of a judgment or order . . . in respect to the personal . . . or legal condition or relation of a particular person, the judgment or order is conclusive upon . . . the condition or relation of the person."

Respondent argues that the "personal or legal relationship," e.g., respondent's marital status, determined in the April 27, 1992, order, brings that order within the scope of Code of Civil Procedure section 1908, subdivision (a)(1), in spite of the ex parte nature of the proceeding. The trial court determined that the marriage order was conclusive under Code of Civil Procedure section 1908, subdivision (a)(1), reasoning that if such orders were not conclusive, a party would be subject to the possibility of inconsistent and conflicting determinations regarding an issue that may govern the rights and duties not only of that party, but of third parties. We are persuaded, however, that the possibility of inconsistent and conflicting determinations does not warrant giving conclusive weight to ex parte judicial orders issued under chapter 10 when to do so would threaten the due process rights of third parties.

As authority for the proposition that respondent's marriage order should conclusively establish the fact and date of her marriage, the trial court relied

on *Estate of Lee* (1927) 200 Cal. 310 [253 P. 145].[5] In *Lee*, a child relied on her parents' judgment of divorce in order to prove that they were validly married at the time of her birth. (*Id.* at p. 313.) In reaching the holding that the child was her father's sole legal heir, the court stated that a "divorce proceeding in so far as it relates to the marriage relation of the parties to the action and the termination of the marriage status is a proceeding *in rem* . . . . As a judgment *in rem* it is binding upon all the world as to the determination of the marital status of the parties and is immune from collateral attack . . . ." (*Id.* at p. 314, citations omitted.)

*Estate of Lee*, however, was specifically distinguished and narrowed by later cases. In *Blumenthal* v. *Blumenthal* (1929) 97 Cal.App. 558 [275 P. 987], the court held that a divorce decree is a conclusive judgment only with respect to the original parties and their privies, but not as between one of the parties and a stranger. (*Id.* at p. 561.) This holding was followed by our Supreme Court in *Rediker* v. *Rediker* (1950) 35 Cal.2d 796 [221 P.2d 1, 20 A.L.R.2d 1152]. In *Rediker*, the second wife sued the husband for separate maintenance. The husband filed a cross-complaint seeking an annulment of the marriage with the second wife on the grounds that at the time they were married he was still married to his first wife. (*Id.* at pp. 798-799.) The husband contended that the judgment of divorce in his first marriage was not obtained until after he married his second wife, and that therefore this divorce judgment conclusively established that he was still married to his first wife at the time he married his second wife. (*Ibid.*) The *Rediker* court stated, however, that the "weight of authority holds that a decree of divorce is a judgment in rem only to the extent that it adjudicates the future status of the parties in relation to each other." (*Id.* at p. 801.) After noting that *Estate of Lee* was properly interpreted in *Blumenthal*, the court stated: "[A]s between strangers or strangers and parties, however, the [divorce] decree is res judicata only in that it conclusively determines that the parties are thereafter free to remarry so far as any relation to each other is concerned. It does not establish the previous validity of their marriage against third persons who were not and had no right to be heard thereon." (*Ibid.*)

It is significant that the court in *Rediker* reached this conclusion in spite of the potential for inconsistent and conflicting determinations regarding the husband's marital status. The court stated: "[t]he rights of an innocent second spouse or the children of a second marriage are not diminished by the

---

[5]The trial court cited two additional cases, both of which are inapposite. In *Buzzi* v. *Buzzi* (1949) 91 Cal.App.2d 823, 825 [205 P.2d 1125], the issue was whether "the court acquired jurisdiction to enter the judgment for annulment . . . through service by publication." *Estate of Radovich* (1957) 48 Cal.2d 116 [308 P.2d 14] concerned the conclusive effect of a probate judgment on inheritance tax considerations. Neither case is sufficiently relevant to the issue of the binding effect of a judicial marriage order on third party interests.

findings of fact in a proceeding to which they were not parties and in which they had no right to be heard. Such a holding would be not only unreasonable but constitutionally objectionable. A decision of any court purporting to bind by the findings of fact of an earlier action a person who was not a party thereto and who had no notice or right to a hearing in that action deprives that person of property without due process of law and is prohibited by the Fourteenth Amendment to the United States Constitution. . . ." (*Rediker* v. *Rediker, supra,* 35 Cal.2d at p. 803, citations omitted.)

We are persuaded by the reasoning in *Rediker* that the doctrine of res judicata, codified in Code of Civil Procedure section 1908, subdivision (a)(1), does not apply to the April 27, 1992, order establishing the fact and date of respondent's marriage. Chapter 10 judicial proceedings are conducted in an ex parte manner. There is no notice requirement. Appellant was not, and had no right to be, heard in that proceeding. To conclude that appellant is bound by the order would be to deprive appellant of its significant interest in the continuation allowance without due process of law.

Because the marriage order is not conclusive under Code of Civil Procedure section 1908, subdivision (a)(1), and the Legislature failed to establish a presumption for marriage orders in section 10550 et seq., we must decide what evidentiary weight to accord the order. In *Mah Toi* v. *Brownell* (9th Cir. 1955) 219 F.2d 642, the court, in a case which predated the amendment to section 10557, was faced with the similar issue of what effect to give to a birth order issued under former section 10600 (the predecessor of section 10550). There, the appellant sought to establish conclusively that he was born in San Francisco on the basis of a court order issued under former section 10600. Recognizing that a contemporaneously issued birth certificate was prima facie evidence of the fact of birth, under former section 10551 (the predecessor of section 10577), but that no such rebuttable presumption was provided for with regard to former section 10600 judicial orders, the court opined that "a judicial order determining place and date of birth under Section 10600 is a statistical record substituting for a birth certificate . . . . [A] birth certificate must be made by the attending physician or midwife or by the parents within four days after the birth. An order under Section 10600 may be made by the superior court on secondary evidence at any time, however long after the birth. Neither law nor reason justifies holding an order to be of greater evidentiary value than a certificate in establishing the place and time of birth . . . ." (219 F.2d at pp. 643-644.) Inasmuch as former section 10551 provided that a birth certificate was prima facie evidence, the court concluded that a judicial order establishing a birth was to be accorded the same evidentiary value. The court noted, however, that " '[p]rima facie evidence is a minimum quantity. It is that which is enough to

raise a presumption of fact; or, again, it is that which is sufficient, when unrebutted, to establish the fact.' [Citation.]" (219 F.2d at p. 644.)

The same result was reached in *United States* v. *Casares-Moreno* (S.D.Cal. 1954) 122 F.Supp. 375. Cognizant of former section 10551 (the predecessor of section 10577) and the defendant's argument that a court order had "higher status," the district court nevertheless stated that "the intent of the Legislature was to have such [a] belatedly established record take its place alongside the promptly recorded records. There is no indication that the Legislature intended to raise records or parts of records so belatedly established to any greater status than the normally registered records which are never, in cases of birth recordation, to be taken as irrebuttable evidence. In other words, it appears that the role of the Superior Court in ordering the recordation partakes of an administrative function. It is merely an act of recordation which has been permitted by judicial action rather than by an administrative officer. The judgment in such an action is not that the facts so found are absolutely conclusive as between petitioner and the rest of the world, but rather, the judgment is that the registrar is ordered to make such a recording." (122 F.Supp. at p. 378.)

In addition, the court in *Casares-Moreno* observed that even if the legislature had intended *ex parte* judicial orders to be conclusive, "[m]aking such an ex parte appearance conclusively establish the facts surrounding a person's birth or death might well infringe on and conclusively determine the rights of any third person having contractual or other relations with, and regulatory duties concerning, such person. This would appear to deny such third person due process." (*United States* v. *Casares-Moreno, supra*, 122 F.Supp. at p. 379.) (See also *Ex Parte Lee Fong Fook* (N.D.Cal 1948) 74 F.Supp. 68, 70 ["The proceeding authorized by California state law for the establishment of the fact of birth is not an adversary proceeding . . . . The United States not being a party to such a proceeding, nor having consented thereto, is not bound by the state court adjudication."].)

The due process considerations noted by the federal courts respecting ex parte orders establishing the fact of a birth would necessarily apply equally to ex parte marriage orders.[6] Unlike the courts in *Mah Toi* v. *Brownell, supra*, 219 F.2d 642, and *United States* v. *Casares-Moreno, supra*, 122 F.Supp. 378, however, we decline to accord marriage orders prima facie effect. A judicial order establishing the date of a marriage under section 10557 is merely a statistical record acknowledging the late registration of a marriage. It is not presumptive or conclusive proof of the fact of the

---

[6]For this reason, one commentator has advised the family practice bar to treat the facts established in marriage orders as not conclusive. (See 1 Kirkland et al., Cal. Family Law: Practice and Procedure, *supra*, § 10.64.)

marriage and has no evidentiary weight whatsoever in this proceeding. To give marriage orders any evidentiary weight would infringe the due process rights of third parties having contractual dealings with the parties to the marriage but who were not privy to the ex parte proceeding.

Here, the trial court erroneously accorded the ex parte marriage order conclusive effect. It therefore failed to address the other issue raised by the petition for writ of mandate—whether respondent is a putative spouse pursuant to Family Code section 2251. The matter must therefore be remanded to the trial court for consideration of this issue.

The judgment is reversed and the matter is remanded to the trial court for further proceedings upon respondent's petition for writ of mandate consistent with this court's opinion. The parties to bear their own costs on appeal.

Anderson, P. J., Poché, concurred.

A petition for a rehearing was denied September 20, 1995.