[No. A084918. First Dist., Div. Five. Nov. 15, 1999.]

LOCAL 21, INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II and III of this opinion are not certified for publication.

## Counsel

Davis & Reno, Duane W. Reno and Charles E. Tillage for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Jonathan Holtzman, Chief Deputy City Attorney, Linda M. Ross, Joseph Quinn and Ellen Forman, Deputy City Attorneys, for Defendants and Respondents.

## Opinion

**HANING, J.**—Plaintiffs/appellants, Local 21 of the International Federation of Professional and Technical Engineers, AFL-CIO (Local 21), The Retired Employees of the City and County of San Francisco (TRE), and class representatives Loris Roulette, Nancy Gin, Anthony G. Sacco, and the class of all retirees similarly situated, appeal a judgment in favor of defendants/respondents City and County of San Francisco (City) and its Health Service System Board in appellants' class action for declaratory relief and writ of mandate compelling the City to provide its retirees the same City-funded

dental benefits obtained by active employees through collective bargaining. Appellants also appeal the denial of their motion to tax costs. They contend the court erred in concluding they had not shown that the charter[2] provisions at issue entitle retirees to the same dental benefits obtained by active employees through collective bargaining, and in awarding the City costs of notifying class members of the action. We affirm.

BACKGROUND

Local 21 is a union representing certain active City employees. TRE is an organization comprised of approximately 3,500 retired City employees which exists in part for the purpose of protecting their rights to retirement allowances and benefits. The plaintiff class is comprised of "All retired employees of [the City] and surviving spouses of active and retired employees[3] of [the City] who received retirement benefits, retirement allowances and/or death benefits during the period from July 1, 1992 until the date of certification of the class."

Appellants originally filed this action in June 1993. Their first amended complaint seeks a declaration that they are entitled to receive "the same dental health insurance coverage to be provided in the same manner and under the same conditions as active employees," and a peremptory writ of mandate compelling the City "to include as health care coverage provided to retired employees the same dental insurance benefits as provided to active employees." Appellants also seek compensation for monetary losses resulting from the City's denial of such benefits since July 1992. Pursuant to stipulation the action was certified as a class action.

The dispute in this case turns on the interpretation and application of charter provisions enacted 30 years apart. Section A8.428(c) (originally enacted in 1961 as former charter § 172.1.11(c)) provides: "Monthly contributions required from retired persons and the surviving spouses of active employees and retired persons participating in the system shall be equal to the monthly contributions required from members in the system, except that the total contributions required from retired persons who are also covered under Medicare shall be reduced by an amount equal to the amount contributed monthly by such persons to Medicare; provided, however, that for the fiscal year commencing July 1, 1973, and for each fiscal year thereafter, [the City] shall contribute funds sufficient to defray the difference in costs to the

[2]Unless otherwise indicated, all charter references are to the Charter of the City and County of San Francisco and all section references are to Appendix A thereof.

[3]It is not clear what is meant by "surviving spouses of active and retired employees." We assume this means surviving spouses of deceased active and retired employees.

system in providing *the same health coverage* to retired persons and the surviving spouses of active employees and retired persons as is provided for active employee members." (Italics added.) Sections A8.409 through A8.409-6, enacted in 1991, extended dental benefits to active employees through collective bargaining.

Appellants contend that section A8.428(c) entitles them to the same dental benefits obtained by active employees. The City's position is that section A8.428(c) is included in a part of the charter that is completely separate from the sections enacted in 1991; therefore, section A8.428(c) does not apply to the sections enacted in 1991, which were intended to apply only to active employees.

The facts are essentially undisputed.

*Charter Formula Method Health Benefits*

Sections A8.420 through A8.432 concern the establishment and administration of a "health service system" (the system) for City employees. In 1957 the charter established the system as a separate City department. (Former charter § 172.1, now § A8.420.) Members of the system include all officers and permanent employees of the City and "such other employees as may be determined by ordinance, subject to such conditions and qualifications as the [City's] board of supervisors may impose, and *such employees as may be determined by collective bargaining agreement*." (§ A8.420, italics added.) The voters adopted the italicized language of section A8.420 in November 1993. (See S.F. Voter Information Pamp. and Sample Ballot, Nov. 2, 1993, Consolidated Gen. Elec., p. 123.)

The system board is empowered to adopt a plan for rendering medical care to system members. (§§ A8.420, A8.422.) "Medical Care" is defined by the system board. (§ A8.430.) Medical care plans must be approved by two-thirds of the system board and three-fourths of the City's board of supervisors (§ A8.422), and each plan may provide for members' dependents, retired City employees and their dependents, and temporary employees to participate in the benefits of the system as the City's board of supervisors may authorize by ordinance (§ A8.425).

The costs of the system are borne, in relevant part, by members of the system, retired persons and the City, who shall contribute to the system fund all funds necessary to administer it. (§ A8.428.) "Retired person" as used in this section means "a former member of [the system] retired under the [City] Employees' Retirement System," and certain surviving spouses of deceased active and retired employees. (*Ibid.*)

The City's contribution to the costs of these medical care plans is based on a formula derived from an annual survey of the 10 most populated California counties. Based on the survey the system board determines the average contribution for each employee. (§ A8.423.) The City is required to contribute to the system fund for each member an amount equal to the average contribution. (§ A8.428(b).) As noted, *ante*, section A8.428(c) provides: "Monthly contributions required from retired persons and the surviving spouses of active employees and retired persons participating in the system shall be equal to the monthly contributions required from members in the system, except that the total contributions required from retired persons who are also covered under Medicare shall be reduced by an amount equal to the amount contributed monthly by such persons to Medicare; provided, however, that for the fiscal year commencing July 1, 1973, and for each fiscal year thereafter, [the City] shall contribute funds sufficient to defray the difference in costs to the system in providing *the same health coverage* to retired persons and the surviving spouses of active employees and retired persons as is provided for active employee members." (Italics added.)

Prior to 1991 actively employed nurses and transit workers were the only City employees covered by City-funded dental plans, and their dental plans were not administered through the system. All other active employees and retirees could enroll, at their own cost, in voluntary dental plans administered through the system.

The 1957 charter amendment establishing the system stated that retired persons participating in the system and system members would make equal monthly contributions to the system fund. (Former charter § 172.1.11).

In 1961 voters adopted Proposition F, amending former charter section 172.1.11(c), which again provided for equal monthly contributions by retired members participating in the system and by system members, and additionally provided that "for the fiscal year commencing July 1, 1962, and for each fiscal year thereafter, [the City] shall contribute funds sufficient to defray the difference in costs to the system in providing *the same health coverage to retired members as is provided for active employee members thereof.*" (Italics added.) The ballot pamphlet argument in support of Proposition F stated that it was intended to: (1) increase the City's contribution to the cost of health benefits in keeping with the practice in private industry; and (2) require the City, rather than active employees, to pay the extra cost of health coverage for retirees. The ballot argument states: "Under the City Charter, the premium paid by a retired employee is fixed at the same amount as the premium for an active young working employee. This means that the additional

[health] expenses incurred by retired persons are being paid for by the active employees. It means that the premiums charged to employees are unfairly loaded. The amendment calls for [the City] to pay the difference between what a retired person actually pays and what it costs the [system] to provide the required protection."

In 1972 voters adopted Proposition O, amending sections A8.423 and A8.428 regarding the manner in which the City's contribution to the system fund is calculated. Section A8.423 established the 10-county survey to determine the average contribution made by each county toward providing health care plans, exclusive of dental or optical care for each county employee, after which the system board would certify to the City's board of supervisors the amount of the average contribution to be made with respect to each City employee. Section A8.428(b) established that the City would contribute to the system fund one-half of the average contribution for each employee. Section A8.428(c) provided that the total contributions required from retirees covered by Medicare would be reduced by the monthly amount of their Medicare contribution. The ballot pamphlet argument in support of the 1972 amendments stated they were designed to alleviate the inequity between the City's and other counties' rates of contribution to system members' costs. The amendments would establish a sensible, fair rate of contribution by the City by payment of one-half of the members' costs based on the average contribution of the 10 most populous California counties. The ballot pamphlet argument noted that the proposed amendments included the following restrictions: (1) The City's contribution would be limited to the member only, dependents were excluded; and (2) *"employees covered by health and welfare provisions of collective bargaining agreements or by special trust funds for this purpose, are also excluded from this amendment."* (Italics added.)

*Collective Bargaining Method Health Benefits*

In 1991 the voters adopted Proposition B, enacted as sections A8.409 through A8.409-6, which gave active City employees the right to collective bargaining with the City for wages, hours, benefits and other terms and conditions of employment, and gave unions the option of obtaining a City-funded dental plan for active employees in exchange for a one-year wage freeze. However, unions could opt to reject collective bargaining and continue to require voter approval to change benefits and working conditions.

Section A8.409 states that except as otherwise provided, "the procedures herein adopted . . . shall supersede and displace all other formulae, procedures and provisions relating to wages, hours, benefits and other terms and conditions of employment found in this charter . . . ."

Section A8.409-1 states that sections A8.409 through A8.409-6 apply, in relevant part, to all miscellaneous officers and employees; that employees in classifications unrepresented by a union may represent themselves with the City over wages, hours and other terms and conditions of employment and are not subject to the arbitration provisions under section A8.409-4; and that for unrepresented employees the mayor is required to annually propose all forms of compensation, including benefits, subject to approval by the City's board of supervisors.

Section A8.409-2 provides, in relevant part, that in return for acceptance of a wage freeze for fiscal year 1991-1992, particular unions could on a one-time only basis elect to bargain for a dental plan.

Section A8.409-3 states that unless specifically set forth "in this part," agreements reached through collective bargaining "shall supersede any and all other conflicting procedures, provisions and formulae contained in this charter, . . . relating to wages, hours, or other terms and conditions of employment."

Section A8.409-4 provides that disputes remaining after collective bargaining must be submitted to a mediation/arbitration board.

Section A8.409-5 entitled "RETIREMENT BENEFITS" provides, in relevant part: "Notwithstanding any other provision of this part, retirement and death allowances shall continue to be set and adjusted" in the manner previously established by the City's charter. In addition, it provides that retirement allowances for 1991-1992 would be set as if no wage freeze were imposed.

The ballot pamphlet analysis of Proposition B stated: "Proposition B is a charter amendment that would allow employee organizations representing most City workers to negotiate wages, hours, benefits and other working conditions through collective bargaining. Employee organizations would have a choice of this extension of collective bargaining or having their terms of employment set as they are now. The decision by an employee organization to choose collective bargaining would be permanent. . . . Generally, the way retirement benefits are set would not change." The controller's ballot pamphlet statement estimated the cost of a dental plan for 1992 at $13 million. Some of the ballot pamphlet arguments in support of Proposition B stated that it gave City employees the ability to trade off salary increases in exchange for obtaining better health benefits. A ballot argument against Proposition B by a former City supervisor stated, " 'B' is an outrageous proposal concocted by the mayor and municipal workers' unions to raid our treasury on behalf of 46,000 active and retired Municipal workers."

At trial the parties agreed that during meetings between Local 21 and the City prior to the drafting of Proposition B, there was no discussion regarding retirees' entitlement to the same dental benefits obtained by active employees through collective bargaining. Local 21 was bargaining only on behalf of active employees, neither it nor the City was interested in collective bargaining for retirees, and it did not want to "muddy up" any of its discussions with additional costs of dental benefits for retirees.

The City's controller testified that his Proposition B ballot pamphlet statement estimate of $13 million as the annual cost to the City of the proposed dental plan did not include an amount for dental benefits for retirees.

In 1992, under memoranda of understanding (MOU's) with the City, some unions opted to obtain City-funded dental benefits for active employees in exchange for their acceptance of the one-year wage freeze. By 1995 most unions had negotiated City-funded dental benefits for their active employee members. Unions cannot bargain for benefits for retirees, and retirees are not covered by the MOU's between the unions and the City. Consequently, retirees do not receive the dental benefits obtained by active employees through collective bargaining. Instead, the City continues to provide retirees the same type of voluntary, self-paid dental benefits it provided to active employees before they obtained the right to collectively bargain for health benefits. As of January 31, 1998, the system listed 18,056 retired employees and surviving spouses of deceased active or retired employees.

*City's Administration of Health Benefits*

Since enactment of the 1991 charter amendments the City has attempted to harmonize sections A8.420 through A8.432 governing administration of the system, and sections A8.409 through A8.409-6 permitting collective bargaining by employees by administering two types of City-funded programs: (1) medical plans financed by the formula referred to in sections A8.423 and A8.428 (the formula method); and (2) medical plans established through collective bargaining agreements with the unions (collective bargaining method).

Under the formula method the system board determines the City's average contribution for each active employee pursuant to section A8.428(b). Pursuant to section A8.428(c) the system provides retirees the same benefits to which active employees are entitled under the charter, and the City contributes the difference between the cost for active employees and retirees. The system board, with approval of the City's board of supervisors, determines

the medical plans to be financed from the average contributions. Currently, the average contributions finance four particular health plans which are offered to employees, retirees and surviving spouses. Each active employee, retiree and surviving spouse is entitled to choose a plan, and can voluntarily pay the cost of additional supplemental benefits and dependents' benefits. Since only active employees are engaged in collective bargaining, the formula method principally determines the City's contribution for retirees. Retirees have the option of enrolling in a dental plan if they pay the cost.

The system also administers the benefits obtained by active employees under the collective bargaining method. Generally, the collective bargaining agreements require the City to contribute toward employee health benefits in excess of the average contribution per employee established under the formula method. The benefits obtained through collective bargaining may vary depending on the bargaining unit and may change with each new contract.

*Statement of Decision*

The trial court first noted that section A8.428(c) does not clearly and unambiguously state whether the phrase "same health coverage" applies only to health benefits granted under sections A8.420 through A8.432, or also to health benefits obtained by collective bargaining under sections A8.409 through A8.409-6. Consequently, the court engaged in statutory construction to ascertain the intent of the voters.

The court concluded that the charter sections establishing collective bargaining and the ballot pamphlet thereon suggest that the voters considered both active employees and retirees in 1991, but intended that dental benefits obtained by collective bargaining be available only to active employees. It also concluded there was no basis to believe that voters in 1961, when section A8.428(c) was enacted, intended for that section to apply to bargained-for dental benefits which did not come into existence until 30 years later. The court also concluded that the City's harmonization of the two sets of charter provisions does not impliedly repeal section A8.428(c), but "maintains in operation all provisions of [the system]."

In contrast, the court observed that under appellants' interpretation, a two-thirds vote of the system board and a three-fourths vote of the City's board of supervisors (§ A8.422) would no longer be required in establishing health benefit plans, the City's contribution would no longer be determined by the 10-county survey (§§ A8.423, A8.428(b)), no benefits would be guaranteed, and collective bargaining would be the sole arbiter of health benefits for both active employees and retirees.

Additionally, the court stated that nothing in section A8.428(c) provides a mechanism to grant retirees benefits based upon the last job classification they occupied, that such an interpretation would improperly add language to section A8.428(c), and such a mechanism would be administratively impossible given the evidence that numerous job classifications have been abolished.

The trial court concluded that the City's interpretation of the charter is reasonable, appellants did not show that the charter clearly states that retirees are entitled to dental benefits obtained by active employees through collective bargaining, and the charter does not provide that retirees are entitled to the health benefits obtained by active employees in the last job classification held by the retiree.

## DISCUSSION

### I

Appellants contend the plain meaning of section A8.428(c) mandates that active employees and retirees are entitled to the same level of health care, and voters intended this meaning in enacting the 1957, 1961 and 1972 charter amendments. They argue that unless interpreted in this way, the system could defray health costs by providing retirees with inferior and less costly coverage, and the provision in section A8.428(c) providing that "the [City] shall contribute funds sufficient to defray the difference in cost to the system in providing the same health coverage" to retirees and active employees would be rendered nugatory.

Appellants concede that the 1991 charter amendments did not extend dental benefits to retirees and surviving spouses. They contend, however, that section A8.428(c) can be harmonized with the 1991 charter amendments by interpreting them as "requiring the City to provide all collectively bargained health care benefits, including dental care, to retirees whenever those benefits are provided to active employees in the classifications or representation units which the retirees last occupied." They argue that under collective bargaining "the funding provisions of . . . sections A8.423 and A8.428(b) are completely irrelevant," and the charter formula for establishing the amount of the City's contribution for health benefits for active employees "has been superseded and rendered completely meaningless by the new collective bargaining provisions."

The City responds that the system established in sections A8.420 through A8.432 is completely separate from the later enacted provisions regarding

collective bargaining, and the same health coverage for active employees and retirees referred to in section A8.428(c) is that provided by the system in sections A8.423 and A8.428, which sets a guaranteed floor for health benefits. The collective bargaining sections permit active employees to bargain for benefits which exceed those established and guaranteed under the charter formula. The City also reasons that because it has continued to provide active employees and retirees with the charter formula health plans at the same premium cost since the enactment of the 1991 charter amendments, section A8.428(c) is not surplusage and sections A8.423 and A8.428 have not been superseded and are not irrelevant. The City contends the legislative history establishes that in enacting the 1991 charter amendments, voters intended to give dental benefits only to active employees who had suffered a wage freeze. Finally, the City argues that requiring it to provide collectively bargained-for dental benefits to retirees based on their last classification would require the court to rewrite the charter.

■ "A writ of mandate lies only when the petitioner shows the respondent failed to act upon a clear, ministerial duty to do so, and the petitioner shows a clear right to such performance. [Citations.]" (*Quirk* v. *Board of Education* (1988) 199 Cal.App.3d 729, 733 [244 Cal.Rptr. 924].) Where, as here, the issue is presented on undisputed facts and involves statutory interpretation, the reviewing court exercises its independent judgment and reviews the matter de novo. (*Bostean* v. *Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108 [73 Cal.Rptr.2d 523]; *U.D. Registry, Inc.* v. *Municipal Court* (1996) 50 Cal.App.4th 671, 674 [57 Cal.Rptr.2d 788].)

■ The court's primary task in statutory construction is to ascertain the intent of the legislative body to effectuate the purpose of the law. (*Franchise Tax Bd.* v. *Superior Court* (1998) 63 Cal.App.4th 794, 798 [73 Cal.Rptr.2d 889].) In construing a provision adopted by the voters our task is to ascertain the intent of the voters. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Lungren*).) We look first to the words themselves, which should be given the meaning they bear in ordinary use. (*Id.* at p. 735; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430].) If the language is clear and unambiguous there is no need for construction and courts should not indulge in it. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934].) However, this plain meaning rule does not prohibit a court from determining whether the literal meaning of a charter provision comports with its purpose, or whether construction of one charter provision is consistent with the charter's other provisions. (See *Lungren, supra,* at p. 735.) Literal construction should not prevail if it is contrary to the voters'

intent apparent in the provision. (See *California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) "An interpretation that renders related provisions nugatory must be avoided . . . , [and] each sentence must be read . . . in the light of the [charter's overall] scheme . . . ." (*Lungren, supra,* at p. 735.) Provisions relating to the same subject matter must be harmonized to the extent possible. (*Schmidt* v. *Retirement Board* (1995) 37 Cal.App.4th 1204, 1210 [44 Cal.Rptr.2d 297].)

■ When statutory language is susceptible of more than one reasonable interpretation, courts should consider a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history including ballot pamphlets, public policy, contemporaneous administrative construction and the overall statutory scheme. (*Lungren, supra,* 45 Cal.3d at p. 740, fn. 14; *San Bernardino Valley Audubon Society* v. *City of Moreno Valley* (1996) 44 Cal.App.4th 593, 601 [51 Cal.Rptr.2d 897].) As a last resort, the interpretation that leads to the more reasonable result will be followed. (*Californians for Population Stabilization* v. *Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 295 [67 Cal.Rptr.2d 621].) A court may not insert qualifying provisions not included, and may not rewrite a statute to conform to an assumed intention which does not appear from its language. (*Crusader Ins. Co.* v. *Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 134 [62 Cal.Rptr.2d 620].)

■ We agree with the trial court that section A8.428(c) does not clearly and unambiguously provide that retirees are entitled to the same dental benefits obtained by active employees through collective bargaining.

A key to understanding the application of sections A8.428(c) and A8.409 through A8.409-6 is the ballot argument on the proposed 1972 amendments to sections A8.423 and A8.428, which states that health benefits obtained through collective bargaining are excluded from the formula method of computation. This directly supports the City's and the trial court's interpretation that benefits available under the charter formula are separate and distinct from those obtainable by active employees through collective bargaining. In addition, because since 1993 section A8.420 has provided that members in the system include "such employees as *may* be determined by collective bargaining agreement," this permissive language supports the inference that active employees may obtain bargained-for health benefits separate from those obtained by system members under the formula method. (Italics added.)

Section A8.428(c) does not mean that retirees *must* be provided with the same health benefits as active employees, regardless of whether such benefits were obtained through collective bargaining. Instead, it means that

retirees and active employees are provided with the same coverage under the formula method, and therefore the City must defray the cost of those premiums.

The trial court recognized the dual health benefit mechanisms—the formula method and the collective bargaining method—administered by the system. The City's contemporaneous approach harmonizes the two sets of charter provisions regarding these dual health benefit mechanisms, avoids surplusage and implied repeal, and constitutes the most reasonable approach. Conversely, appellants' approach would render sections of the charter nugatory and imply qualifying charter provisions not included therein. Thus, the court properly concluded that appellants did not establish their entitlement to dental benefits obtained by collective bargaining.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Disposition

The judgment and the order denying the motion to tax costs are affirmed. Costs to respondents.

Jones, P. J., and Stevens, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 16, 2000.

---

*See footnote 1, *ante*, page 213.