Filed 2/5/16

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| RALPH LEE WHITE, | C073482 |
| Plaintiff and Appellant, | (Super. Ct. No. 39-2012-00279925-CU-WM-STK) |
| v. | |
| CITY OF STOCKTON et al., | |
| Defendants and Respondents; | |
| ANN JOHNSTON, | |
| Real Party in Interest and Respondent. | |


APPEAL from a judgment of the Superior Court of San Joaquin County, Lesley Holland, Judge. Affirmed.

Michael F. Babitzke, Inc., Michael F. Babitzke; and Aliyah S. Abdullah for Plaintiff and Appellant

John M. Luebberke, City Attorney, Neal C. Lutterman, Deputy City Attorney; Burke, Williams & Sorensen, Manuela Albuquerque, and Stephen E. Velyvix for Defendants and Respondents.

Freeman Firm and Thomas H. Keeling for Real Party in Interest and Respondent.

This appeal asks us to interpret a term limit provision found in the City of Stockton's city charter. The voter adopted provision, section 606 of article VI of the Stockton City Charter (hereafter section 606), reads in relevant part: "No person elected as either Mayor or Councilmember shall be eligible to serve, or serve, as either Mayor or Councilmember for more than two (2) terms . . . ."

Plaintiff Ralph Lee White contends the measure imposes a limit on the cumulative number of terms a person may serve in elective office, no matter the combination of offices served. The City of Stockton (the City) argues, and the trial court found, the measure does not impose a cumulative limit. We agree with the City and affirm the judgment.

BACKGROUND

By petition for writ of mandate, White sought to remove real party in interest Ann Johnston as mayor of the City of Stockton and to enjoin placing her name on the municipal election ballot of June 2012 for reelection as mayor. White contended Johnston was ineligible to sit as mayor and to run for reelection under section 606. He argued section 606 limited a person from serving in elected office, either as mayor or as a council member or in any combination of both, to no more than two cumulative four-year terms. Because Johnston had served two terms as a council member prior to being elected mayor, White asserted she was ineligible to serve as mayor and to run for reelection.

The trial court denied White's petition for an alternative writ. Johnston's name was placed on the June 2012 ballot, as was White's, who also was running for mayor. Johnston received the most votes in the election and qualified for a runoff election. White did not qualify. That November, Johnston lost the general election.

Following a hearing, the trial court on March 11, 2013, denied White's petition for writ of mandate. A restriction on the constitutional right to hold public office must be expressed in unambiguous terms. The court found section 606 was ambiguous because it

2

did not clearly and plainly impose a cumulative term limit.  It then found the City's construction of section 606 as not imposing a cumulative limit was reasonable and not clearly erroneous in light of the official ballot pamphlet used when the voters adopted section 606 and the City's consistent practice of not reading section 606 as imposing a cumulative limit.

White appeals from the trial court's judgment.

DISCUSSION

We conclude section 606's plain language indicates the measure applies to the offices of mayor and council member separately, not cumulatively.  Were we to determine the measure was ambiguous, we would reach the same conclusion.  The materials before the voters when they adopted section 606, the City's consistent interpretation and application of the measure, and other provisions of the city charter regarding elected officers, indicate the voters intended section 606 to apply to the offices of mayor and council member separately, not cumulatively.

I

*Standard of Review*

Construing a city charter is a legal issue we review de novo.  (*United Assn. of Journeymen v. City and County of San Francisco* (1995) 32 Cal.App.4th 751, 759, fn. 6.) The same principles of construction we apply to statutes apply to interpreting city charter provisions.  (*Id*. at p. 760.)

"In construing a provision adopted by the voters our task is to ascertain the intent of the voters.  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 (*Lungren*).)  We look first to the words themselves, which should be given the meaning they bear in ordinary use.  (*Id.* at p. 735; *Killian v. City and County of San Francisco* (1978) 77 Cal.App.3d 1, 7.)  If the language is clear and unambiguous there is no need for construction and courts should not indulge in it.  (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800.) However, this plain meaning rule does not prohibit a court from determining whether the

3

literal meaning of a charter provision comports with its purpose, or whether construction of one charter provision is consistent with the charter's other provisions. (See *Lungren, supra,* at p. 735.) Literal construction should not prevail if it is contrary to the voters' intent apparent in the provision. (See *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) 'An interpretation that renders related provisions nugatory must be avoided . . . , [and] each sentence must be read . . . in the light of the [charter's overall] scheme . . . .' (*Lungren, supra,* at p. 735.) Provisions relating to the same subject matter must be harmonized to the extent possible. (*Schmidt v. Retirement Board* (1995) 37 Cal.App.4th 1204, 1210.)

"When statutory language is susceptible of more than one reasonable interpretation, courts should consider a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history including ballot pamphlets, public policy, contemporaneous administrative construction and the overall statutory scheme. (*Lungren, supra,* 45 Cal.3d at p. 740, fn. 14; *San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 601.) As a last resort, the interpretation that leads to the more reasonable result will be followed. (*Californians for Population Stabilization v. Hewlett–Packard Co.* (1997) 58 Cal.App.4th 273, 295 [disapproved on another ground in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 171, 175].) A court may not insert qualifying provisions not included, and may not rewrite a statute to conform to an assumed intention which does not appear from its language. (*Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 134.)" (*International Federation of Professional & Technical Engineers v. City and County of San Francisco* (1999) 76 Cal.App.4th 213, 224-225.)

II

*Interpreting Section 606 on Its Face*

With these rules of construction in hand, we turn to section 606. Written by the city council and approved by the electorate, it reads in pertinent part: "No person elected

4

as either Mayor or Councilmember shall be eligible to serve, or serve, as either Mayor or Councilmember for more than two (2) terms . . . ." White contends section 606 is not ambiguous, and on its face imposes a cumulative term limit on serving as an elected city official. He asserts the term "either" means "one *and* the other of two" or "one *or* the other of two." He claims this definition makes it clear section 606 prohibits candidates from serving in any combination of the two offices for more than two terms.

White also contends section 606's second reference to mayor or council member is really a reference to an elected office on the city council, just as the measure's first reference to "person[s] elected as either Mayor or Councilmember" can be seen as a reference to any elected member of the city council.

The measure's language is clear, but it does not support White's interpretation. Section 606 is addressed to certain "persons." Its subjects are the individuals elected as either mayor or council member, who collectively comprise the city council. However, the measure prohibits those persons from serving, or being eligible to serve, in either the office of mayor or the office of council member for more than two terms. The restriction imposes term limits based on the elected office, not on membership in the city council as a whole.

As a conjunction, the word "either" is "used as a function word before two or more coordinate words, phrases, or clauses joined [usually] by *or* to indicate that what immediately follows is the first of two or more alternatives . . . ." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 399, col. 1, original italics.) Section 606 imposes limits on a person serving in the office of mayor, or, alternatively, the office of council member, but not on both cumulatively.

White contends that if the city council, which authored section 606, had intended the provision to apply to each elected office independent of the other, it could have included language expressly stating so. The lack of such language, White asserts, shows the city council's intention that section 606 apply cumulatively. To the contrary, in this

5

instance, the lack of such language indicates the city council did not intend for section 606 to apply cumulatively.

Constitutional law requires any limitation on a citizen's right to stand for election for a public office to be stated expressly and clearly. "[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship. . . . The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. [Citation.]" (*Carter v. Commission on Qualifications of Judicial Appointments* (1939) 14 Cal.2d 179, 182.) The right to run for, and hold public office may "be curtailed only if the law clearly so provides." (*Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 977.)

Because of this rule, it was incumbent upon the city council, if it intended section 606 to apply cumulatively, to say so clearly. It did not. For example, the California Constitution imposes a cumulative limit on the number of terms a person may serve in the state legislature. It reads, in part: "During her or his lifetime a person may serve no more than 12 years in the Senate, the Assembly, or both, in any combination of terms. . . ." (Cal. Const., art. IV, § 2, subd. (a)(4).) Section 606, however, does not include a similar type of statement. Because the measure does not contain an express and clearly written cumulative limitation, we are required to resolve any ambiguity in favor of eligibility to run for office.

The City's interpretation does just that. Its construction is reasonable and clear from the measure's language: No person elected as either mayor or council member may serve in the office to which he or she was elected for more than two terms. For example, a person elected as mayor is not eligible to serve as mayor for more than two terms, nor is he or she eligible to serve as a council member for more than two terms if he or she later wins an election to that office.

III

*Interpreting Section 606 Using Extrinsic Aids*

Because the City's interpretation is the only reasonable interpretation, we need not rely on extrinsic aids to see if a different interpretation would apply. However, were we to conclude White's interpretation of section 606 was reasonable, and the measure was therefore ambiguous, our review of extrinsic aids would still convince us that the Stockton voters did not intend section 606 to impose a cumulative limitation. Taken together, the ballot materials, the city's implementation of section 606, and other provisions in the city charter indicate the voters intended section 606 to apply to the offices of mayor and council member separately, not cumulatively.

We begin by reviewing the ballot materials, but to do that correctly, we must place them in context. They disclose the voters were given an opportunity to adopt a more restrictive term limit provision, but the voters instead chose what became section 606. At the general election in 1986, Stockton voters were asked to approve one of two city charter amendments designed to reform the city council. Both addressed the election of, and qualifications for, the offices of mayor and council member. The first proposed amendment, Measure B, proposed the city council consist of a mayor and eight council members. The mayor would be elected at large, and the council members would be elected through district elections, with one council member elected from each district. Measure B also included a term limit provision, which read: "No person elected as a member of the *City Council* shall be eligible to serve, or serve, for more than two consecutive terms . . . ." (Italics added.) Because Measure B defined the city council as including the mayor and the council members, its term limit provision, applying as it did to all persons elected as members of the city council, would have imposed a cumulative term limit.

7

The other proposed amendment, Measure C, included the provision that became section 606. Measure C proposed the city council consist of a mayor and six council members. The mayor would be elected at large, but, unlike in Measure B, all of the City's voters would elect a council member for each of the six districts from the two candidates who received the most votes in separate district elections. Also, unlike Measure B's term limit provision that applied to all persons "elected as a member of the City Council," Measure C's term limit provision, i.e., what became section 606, prohibited persons elected as "either council member or mayor" from serving or being eligible to serve "as either council member or mayor" for more than two terms.[1]

At the election, then, the voters were given the opportunity to adopt a term limit provision that would have applied cumulatively, and they chose instead a provision that did not expressly impose a cumulative limit. This indicates the voters did not favor a cumulative limitation; they intended section 606 to apply to each elected office separately. " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." [Citation.]' [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 367.)

Other ballot materials do not strongly indicate that Measure C's term limit provision would apply cumulatively. The city attorney's impartial analysis of Measures B and C implied the term limit provisions in both measures would apply to the separate elected offices. Describing Measure B, the city attorney wrote: "No councilmember or the Mayor could serve more than two consecutive terms . . . ." Describing Measure C,

---

[1]     We note the measure's language contained in the ballot materials used the phrase and spelling "council member or mayor," while the codified version of section 606 uses the phrase and spelling "Mayor or Councilmember." Nothing in the record explains the differences. Like the parties, we assume the differences are immaterial.

the city attorney wrote: "No councilmember or the Mayor could serve more than two (2) terms . . . ." These statements distinguish between the two elected offices. Voters would not understand these statements to mean the council members and mayor were limited to two cumulative terms.

Only one argument contained in the ballot materials addressed the term limit issue; the argument in favor of Measure C. That argument stated: "Measure C would also limit council members to two terms in office, ridding the city of 'Career Politicians' and provide a fresh source of new ideas." Unlike the actual language of Measure C, the argument either addressed itself only to council members, or, more likely, it did not distinguish between council members and the mayor.

After reading the ballot measures' actual language, the city attorney's analysis, and the argument in favor of Measure C, voters may have been confused as to what the term limit provision in Measure C actually would do. We find section 606's actual language and the voters' choice of Measure C over Measure B to be the most persuasive evidence of intent. The ballot argument, because of its contradiction to the measure's language, is the least compelling evidence of intent in this instance. "As a general matter, . . . ballot pamphlet arguments are intended as advocacy pieces, and voters undoubtedly are aware that such arguments may tend to overstate or exaggerate the benefits or detriments of a proposition and often are written in broad rhetorical terms that do not necessarily reflect the specific language or effect of the measure itself. As a consequence, a court must be cautious in considering such arguments and in attempting to gauge what weight the arguments properly should bear in the court's interpretation of a proposition's language." (*Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 585 (conc. & dis. opn. of George, C.J.).)

We find another indication of voter intent from reviewing how the City has applied section 606. As we would expect, the City has not applied it cumulatively. The Stockton City Clerk, Bonnie Paige, declared the City has consistently interpreted section

9

606 to apply to each elected office independently to preclude a person from holding more than two terms as a council member or more than two terms as mayor. The City has never applied section 606 to preclude a council member who has served two terms in that office from running for mayor, or to preclude a mayor who has served two terms in that office from running for council member. Since the voters adopted section 606, two persons who have served two terms as council members have run for mayor, and both stood for election. No person who has served two terms as mayor has run for council member. The City's application of section 606 is another indication that the voters did not intend section 606 to be applied cumulatively.

A third type of extrinsic aid to assist our analysis is the city charter itself. When constructing a charter provision, we are obligated to harmonize it with other charter provisions. White contends that because the mayor and the council members are all members of the city council, section 606 should apply cumulatively. We disagree, because the charter treats the offices of mayor and council member separately except where it expressly says it is treating them cumulatively. Section 606 best harmonizes with the charter when we interpret it to apply to the offices of mayor and council member separately.[2]

The charter distinguishes between the city council, the office of mayor, and the office of council member. The city council is the governing body of the city. Members of the city council are the six "Councilmembers" and the "Mayor." (Stockton Charter, § 401.) When the charter addresses the members of the city council cumulatively as a group, it expressly does so by referring to them as the "Council" (*Id.*, § 401 et seq.) or "City Council." (Stockton Charter, § 500 et seq.) When the charter addresses the members of the city council collectively and individually, it does so by using such

---

[2] On our own motion, we take judicial notice of the Stockton City Charter. (Evid. Code, § 451, subd. (a).) (See http://qcode.us/codes/Stockton/)

10

phrases as: "Neither the Council nor any of its members nor the Mayor" and "the Council, its members and the Mayor." (Stockton Charter, § 408.) Of course, section 606 does not use any of the language the charter uses when the charter refers to the members of the city council collectively.

Except for those circumstances just noted, the charter treats council members and the mayor separately. Council members and the mayor are elected under different procedures. Council members are nominated through district elections and then voted upon by the voters of the entire city at a general municipal election. Each council member must reside in the district he or she represents. (Stockton Charter, § 601.) Signatories to nominating papers for a candidate for council member must reside in the candidate's district. (Stockton Charter, § 703.) In contrast, the mayor is elected by all of the city's voters at a primary municipal election. If no candidate receives a majority of the votes, the two candidates receiving the most votes vie for the office at a runoff election to be held at the next general election. The candidates for mayor must reside in the city but not in any particular district. (Stockton Charter, § 602.) The signatories to his or her nominating papers must reside in the city but not in any particular district. (Stockton Charter, § 703.)

The charter also imposes on the mayor more responsibility in governing the city than it does on council members. The mayor is to devote his or her full time to the office. (Stockton Charter, §§ 410, 1100.) The charter does not impose a similar requirement on council members. The charter mandates "the Mayor shall be the political leader within the community by providing guidance and leadership to the Council, by expressing and communicating to those he or she serves the City's policies and programs and by assisting the Council in the informed, vigorous and effective exercise of its powers." (Stockton Charter, § 1101.)

Continuing with similar examples, we note the mayor is required to preside at city council meetings, to control the agenda for those meetings, to make recommendations to

11

the city council and the city manager on policy and program matters, and to direct appointed city officials to report to the council. (Stockton Charter, § 1102(a), (b), (c), (d), (*l*).) The mayor is required to give a state of the city address annually and to articulate the policy plans he or she proposes for the City. (*Id*., § 1102(i).) The mayor is also required to nominate a vice mayor from among the council members. (Stockton Charter, § 1103.)

The mayor oversees the City's budget. The mayor prepares and delivers to the city council the Mayor's Proposed Budget Priorities and Direction and the Mayor's Budget Message (Stockton Charter, § 1905), and the Mayor's Final Budget Modifications. (Stockton Charter, § 1907.) The mayor recommends adjustments to the city budget and proposes modifying or curtailing any city service. (Stockton Charter, § 1102(k).) Council members do not carry these obligations.

With the city charter so clearly distinguishing between the offices of mayor and council member, section 606 can be harmonized with the charter only by constructing it to impose term limits on the offices of mayor and council member separately. Just as the charter distinguishes between the separate offices unless it expressly addresses them collectively, section 606 distinguishes between the separate offices, and it does so without expressly addressing the offices in any type of collective manner.

In short, all of the extrinsic aids we may legitimately review—the ballot materials, the City's practice under section 606, and the language of the city charter—indicate the voters intended section 606 to apply to the offices of mayor and council member separately, not cumulatively. The trial court reached the correct result.

IV

*Alleged Evidentiary Error*

White asserts the trial court erred when it determined two declarations he submitted to support his petition were irrelevant. The trial court did not err. One declaration was from White, attesting that he was a council member when Measure C

12

was placed on the ballot, and that the council intended the term limit provision to apply cumulatively. The other declaration was from Michael Rishwain, an attorney employed in the city attorney's office when Measure C was drafted and who assisted in preparing the city attorney's impartial analysis. Mr. Rishwain stated it was his recollection that the consensus among attorneys in the city attorney's office was that the term limit provision would apply cumulatively.

These declarations were irrelevant. Only ballot materials placed before the voters are relevant to determining what the voters intended when they adopted section 606. Individual legislator opinions and legislative committee reports that were not provided to the voters are inadmissible to determine voter intent. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 904-905; *Delaney v. Superior Court, supra,* 50 Cal.3d at p. 801, fn. 12.)

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants and the real party in interest. (Cal. Rules of Court, rule 8.278(a).)


    NICHOLSON     , J.


We concur:


    BLEASE     , Acting P. J.


    DUARTE     , J.


13